IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-02470-NYW-SBP

PRO POLISH, LLC,

      Plaintiff,

v.

ZAREH ABKARIAN,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS

---

This matter comes before the Court on the Combined Motion to Dismiss for Lack of Personal Jurisdiction and, Alternatively, Improper Venue ("Motion to Dismiss"), [Doc. 9, filed September 29, 2023], filed by Defendant Zareh Abkarian ("Defendant" or "Mr. Abkarian"). The Motion to Dismiss is opposed by Plaintiff Pro Polish, LLC ("Plaintiff" or "Pro Polish"). The Court finds that oral argument will not materially assist in the disposition of the Motion to Dismiss. Upon review of the Parties' briefing, the entire docket, and the applicable case law, this Court respectfully **GRANTS** the Motion to Dismiss.

## BACKGROUND

The following allegations from the Complaint and Jury Demand ("Complaint"), [Doc. 3], are taken as true for the purposes of this Order.[1] Pro Polish provides specialized aircraft windshield and window repair services and operates from a central facility in

---

[1] The Court discusses additional factual material submitted in connection with the Parties' jurisdictional briefing throughout the analysis below.

Englewood, Colorado.  [*Id.* at ¶¶ 2, 14–15].  Pro Polish also services customers in and around Van Nuys, California.  [*Id.* at ¶ 15].  Mr. Abkarian lives and works in California. [*Id.* at ¶¶ 3, 20].  In late 2019, Pro Polish and Mr. Abkarian entered negotiations regarding a prospective independent contractor relationship whereby Mr. Abkarian would provide Pro Polish services to Pro Polish customers in Colorado and California in exchange for Pro Polish administrative support and a share of the revenue.  [*Id.* at ¶ 16].  Ultimately, these negotiations culminated in an agreement ("Agreement"), under which Mr. Abkarian agreed to service Pro Polish customers and Pro Polish agreed to perform all administrative tasks (e.g., back-office billing, quoting, and other paperwork services) and provide Mr. Abkarian insurance coverage, equipment, and its proprietary means, methods, and processes for aircraft window repair.  [*Id.* at ¶¶ 17–19].  Mr. Abkarian also would receive a 55% cut of revenues generated by work he performed for Pro Polish customers in California.  [*Id.* at ¶ 20].

In or around mid- to late-2020, Mr. Abkarian began billing some Pro Polish customers directly (retaining all funds from those customers), while continuing to bill some Pro Polish customers through Pro Polish to avoid suspicion.  [*Id.* at ¶ 22].  Upon discovering Mr. Abkarian's scheme to siphon off its business, Pro Polish confronted Mr. Abkarian, who admitted to billing Pro Polish customers directly and to retaining all the resulting revenues.  [*Id.* at ¶¶ 24–25].  Pro Polish terminated the Agreement and demanded that Mr. Abkarian return all Pro Polish equipment and materials in his possession.  [*Id.* at ¶ 26].  Mr. Abkarian has not returned Pro Polish's equipment or materials and continues to use Pro Polish's property and proprietary methods to profit from servicing former Pro Polish customers.  [*Id.* at ¶¶ 27–28].

Pro Polish filed this action in Colorado state court on June 20, 2023.  [*Id.* at 13].  In the Complaint, Pro Polish asserts five claims against Mr. Abkarian that sound in both contract and tort:  (1) breach of contract, (2) unjust enrichment, (3) fraud, (4) civil theft, and (5) conversion.  The first three claims stem from Mr. Abkarian's alleged theft of Pro Polish customers and profits, while the latter two claims stem from Mr. Abkarian's alleged theft of Pro Polish's physical property after the Parties' Agreement terminated.

On September 22, 2023, Mr. Abkarian removed this case to federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332.  [Doc. 1 at ¶ 2].  Mr. Abkarian subsequently moved to dismiss.  [Doc. 9].  The Motion to Dismiss is fully briefed, [Doc. 16; Doc. 22], and ripe for decision.

## LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge the court's exercise of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "[P]laintiffs bear the burden of establishing personal jurisdiction."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).

When, as here, a court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008); *see also id.* at 1056 ("[I]n the preliminary stages of litigation, the plaintiff's burden is light.").  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  In considering this question, a court must accept all well-pleaded facts as true and resolve any factual disputes in favor of the plaintiff.  *See Wenz*

*v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *see also Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1189 (D. Colo. 1999) (noting that the Court "must resolve all disputed facts and draw all reasonable inferences in the plaintiff's favor").

## ANALYSIS

The Motion to Dismiss contends that the Court lacks personal jurisdiction over Mr. Abkarian under Rule 12(b)(2) and that, in the event the Court has jurisdiction, the District of Colorado is an improper venue under Rule 12(b)(3).  The Court finds that it cannot exercise personal jurisdiction over Mr. Abkarian under Rule 12(b)(2).  Accordingly, the Court does not reach Mr. Abkarian's Rule 12(b)(3) argument.

## I.   Personal Jurisdiction, Generally

"The requirement that a court have personal jurisdiction flows from the Due Process Clause.  It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty."  *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (cleaned up).  "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."  *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (emphasis omitted).  However, "Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, extends jurisdiction to the [United States] Constitution's full extent.  The personal jurisdiction analysis here is thus a single due process inquiry."  *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (citations omitted).

"To exercise jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would

not offend traditional notions of fair play and substantial justice." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quotation and alteration omitted); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A defendant's contacts may give rise to general or specific personal jurisdiction. *See Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). General jurisdiction arises when a defendant's contacts with the forum state are so continuous and systematic as to essentially render it "at home" in that state. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). Specific jurisdiction is particular to the instant action and arises where a defendant purposefully directs its activities to residents of the forum, and the cause of action arises out of those activities. *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007).

"Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078. The analysis turns on a host of nondispositive factors. For example, a nonresident's contract with a forum resident is insufficient, by itself, to establish jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Relatedly, "'[f]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). And "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State," the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp.*, 471 U.S. at 476 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770,

774 (1984)).  Instead, "with respect to interstate contractual obligations, . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)).  And for tort claims, "'purposeful direction' has three elements: (a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state." *Newsome v. Gallacher*, 722 F.3d 1257, 1264–65 (10th Cir. 2013) (cleaned up).

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp.*, 471 U.S. at 475 (quotation omitted).  Rather, "the contract relied upon to establish minimum contacts must have a 'substantial connection' with the forum state." *TH Agric. & Nutrition, LLC v. Ace Euro. Grp. Ltd.*, 488 F.3d 1282, 1288 (10th Cir. 2007) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)); *see also Burger King Corp.*, 471 U.S. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.").  "To determine whether a nonresident defendant has purposefully established minimum contacts with the forum state by contracting with another party, we therefore examine 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *TH Agric. & Nutrition, LLC*, 488 F.3d at 1288 (quoting *Burger King Corp.*, 471 U.S. at 479).  In this regard, "[p]hone calls, letters, facsimiles, and emails 'provide additional evidence that [a foreign defendant] pursued a continuing business relationship with [a plaintiff].'" *AST Sports Sci., Inc.*, 514 F.3d at 1059 (quoting *Pro Axess, Inc. v.*

*Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005)); *see also id.* ("[M]odern communications can eliminate the need for physical presence."). "In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards." *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988). "The proper focus for analyzing these contacts is whether they represent an effort by the defendant to 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State.'" *Id.* at 1419 (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Finally, even if a defendant's minimum contacts with the forum state give rise to the cause of action at bar, courts may not exercise specific personal jurisdiction over a foreign defendant where doing so would offend "traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1071. That inquiry implicates the following factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings, Inc.*, 149 F.3d at 1095. "The reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004) (cleaned up).

## II.    Personal Jurisdiction over Mr. Abkarian

In the Motion to Dismiss, Mr. Abkarian asserts that Plaintiff cannot establish either general or specific personal jurisdiction.  *See* [Doc. 9 at 4–8].  In support of this argument, Mr. Abkarian attaches his own affidavit, wherein he attests to various facts about his relationship with Pro Polish and his business activities more generally.  *See* [Doc. 9-1]; *see also* [Doc. 9 at 2–4].  The following facts are drawn from that affidavit.

Mr. Abkarian has been a resident of Grenada Hills, California since 2005.  [Doc. 9-1 at ¶ 4].  He has worked as an aircraft mechanic in California, primarily at Van Nuys Airport in Van Nuys, California, since approximately 2000.  [*Id.* at ¶ 8].  Chris Becker ("Mr. Becker"), Pro Polish's founder, president, and principal, also performed work at Van Nuys Airport.  [*Id.* at ¶ 9; Doc. 3 at ¶ 21].  Messrs. Becker and Abkarian saw an opportunity to do business together at Van Nuys Airport, and subsequently entered into the Agreement in or around January 2020.[2]  [Doc. 9-1 at ¶ 9].  According to Mr. Abkarian, the Parties'

---

[2] Mr. Abkarian attests that Mr. Becker brought the Agreement to California for Mr. Abkarian to read and sign.  [Doc. 9-1 at ¶ 10].  In support, Mr. Abkarian attaches an unsigned copy of the alleged Agreement to his affidavit, dated January 6, 2020.  [*Id.* at 7–8].  In its response, Pro Polish argues that Mr. Abkarian's position is "refuted by the evidence."  [Doc. 16 at 13].  In support, Pro Polish cites to Mr. Becker's declaration that he "emailed the agreement to [Mr. Abkarian] from Colorado, after which [the Parties] agreed to its terms remotely," [*id.* (citing [Doc. 16-1 at ¶ 17])], and a screenshot of an email submitted as an exhibit to the declaration, [*id.* (citing [Doc. 16-2])].  The screenshot appears to represent an email from Mr. Becker to Mr. Abkarian on January 10, 2020, with an attachment labeled "zareh.docx."  [Doc. 16-2].  The body of the email reads: "let me know you got this [sic] fill in questions you would like me to address and send back [sic] Chris."  [*Id.*].  However, Plaintiff failed to provide a copy of the Word document attached to Mr. Becker's email, so the Court is unable to discern whether the Word document is identical to the version provided by Mr. Abkarian.  In any event, Plaintiff does not dispute Mr. Abkarian's attestation that he did not travel to Colorado to negotiate or sign the Agreement.  *Cf.* [Doc. 16-1 at ¶ 17 ("[W]e agreed to its terms remotely.  The agreement was not physically signed, and I did not travel to California to transmit it to Mr. Abkarian.")].

first job under the Agreement was performed at Van Nuys Airport; Mr. Becker traveled to California, and the Parties performed the job together.  [*Id.* at ¶ 10].

Mr. Abkarian has never performed work for Pro Polish customers in Colorado.  [*Id.* at ¶ 14].  Most of Mr. Abkarian's work with Pro Polish was performed at Van Nuys Airport in California, although he performed "a couple of jobs" with Pro Polish in Nevada and Arizona.  [*Id.*].  Mr. Abkarian has never traveled to Colorado on Pro Polish business, been to the Pro Polish office in Colorado, or received training for Pro Polish services in Colorado.  [*Id.* at ¶¶ 12–15].  More generally, Mr. Abkarian neither advertised his services as an aircraft mechanic nor solicited business from customers in Colorado.  [*Id.* at ¶ 17].  With respect to the allegedly stolen Pro Polish property, Mr. Abkarian attests that he received all the equipment and materials in California, and he did not travel to Colorado to transport any of the equipment or materials to California.  [*Id.* at ¶ 18].

Plaintiff's Response appends two documents.  First, Plaintiff submits the Declaration of Mr. Becker, who attests to Pro Polish's residency in Englewood, Colorado and to the accuracy of the representations in the Complaint and Response.  *See generally* [Doc. 16-1].  Plaintiff's second document is an exhibit to Mr. Becker's Declaration, which appears to be an electronic mail communication between Mr. Becker and Mr. Abkarian.  [Doc. 16-2].

### A.     General Jurisdiction

In its response, Plaintiff confirms that it "does not contend the Court has general personal jurisdiction."  [Doc. 16 at 4 n.2].  Given Plaintiff's concession on this point and the record before it, the Court respectfully concludes that it lacks general jurisdiction over Mr. Abkarian.

### B.      Specific Jurisdiction

Mr. Abkarian first argues that the Complaint fails to allege any basis for personal jurisdiction over him premised on the Parties' alleged Agreement or business dealings. [Doc. 9 at 6–7].  Next, Mr. Abkarian argues that specific jurisdiction is lacking because his alleged actions regarding California customers and property in California were not "expressly aimed" at Colorado, and Colorado was not the "focal point" of his alleged tortious conduct.  [*Id.* at 8–9].  The Court considers both arguments, starting with whether Mr. Abkarian "expressly aimed" his allegedly tortious conduct at Colorado.[3]

Although Plaintiff argues that Mr. Abkarian "purposefully directed his activities at Colorado," [Doc. 16 at 4], and recites case law regarding purposeful direction under the "effects test" in the personal-jurisdiction context, *see, e.g.*, [*id.* at 3–14], its allegations do not show that Mr. Abkarian purposefully directed sufficient activities toward Colorado to support exercising this Court's jurisdiction.

---

[3] In this case, Plaintiff asserts claims sounding in both contract and tort.  While it is not entirely clear whether the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") mandates that personal jurisdiction be analyzed on a claim-by-claim basis, *compare Martin v. SGT, Inc.*, No. 2:19-cv-00289-RJS, 2020 WL 1930109, at *5 n.81 (D. Utah Apr. 21, 2020) *(citing Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 96 n.4 (10th Cir. 2012) (observing that the Tenth Circuit has never mandated analyzing personal jurisdiction on a claim-by-claim basis)), *with Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2021 WL 952215, at *3 (D. Colo. Mar. 11, 2021) (observing that personal jurisdiction is assessed claim by claim), "once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction," *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (quoting *Anderson v. Century Prods. Co.*, 943 F. Supp. 137, 145 (D.N.H. 1996)).

### 1.   Tort Claims

"Purposeful direction in [the tort] context has three elements: (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020). In briefing the Motion to Dismiss, the Parties focus primarily on the second element. *See* [Doc. 9 at 6–8; Doc. 16 at 6–12; Doc. 22 at 1–9]. Because the Court finds that the relevant factual allegations fail to demonstrate that Mr. Abkarian's tortious conduct was "expressly aimed" at Colorado, the Court's analysis begins and ends with the second step of the inquiry.

At the second step, the Court must focus its "express aiming analysis on whether the defendant's allegedly tortious conduct was focused on or directed at the forum state," and *not* "on whether the defendant's wrongful conduct was focused on or directed at the interests of plaintiffs who reside in or otherwise have significant connections to the forum state." *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 972 (10th Cir. 2022). In other words, the Court asks whether Mr. Abkarian's "conduct connects him to [Colorado] in a meaningful way," and not whether Pro Polish "experienced a particular injury or effect." *See Walden v. Fiore*, 571 U.S. 277, 290 (2014). This analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285.

***Plaintiff's Reliance on Ninth Circuit Cases is Misplaced.*** Plaintiff cites *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011), for the proposition that the "express aiming requirement" is met where "'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to

be a resident of the forum state.'"  [Doc. 16 at 6 (quoting *CollegeSource*, 653 F.3d at 1077) (emphasis omitted)].  But Ninth Circuit law is not binding on this Court.  *See FDIC v. Daily*, 973 F.2d 1525, 1532 (10th Cir. 1992).

Equally significant, Plaintiff's reliance is misplaced considering the United States Supreme Court's 2014 decision in *Walden v. Fiore*.  Since *Walden*, the Ninth Circuit has rejected the test applied in *CollegeSource* and its progeny because:

> *Walden* requires more.  In *Walden*, the Supreme Court rejected [the Ninth Circuit's] conclusion that the defendants' "knowledge of [the plaintiffs'] 'strong forum connections,'" plus the "foreseeable harm," the plaintiffs suffered in the forum, comprised sufficient minimum contacts.  134 S. Ct. at 1124–25.  The Court found that [the Ninth Circuit's] approach "impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis."  *Id.* at 1125.  The Court made clear that we must look to the defendant's "own contacts" with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum.  *Id.* at 1124–25.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069–70 (9th Cir. 2017) (some alterations in original).  *See also Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state.").

Even so, Plaintiff, relying exclusively on cases that apply pre-*Walden* authority to the "express aiming" analysis, asserts that "jurisdiction is proper in the *forum* state—not the state where the Defendant is located or where the Defendant's actions physically took place."  [Doc. 16 at 6, 11 (collecting cases)].  The Court is not persuaded by Plaintiff's citations to Ninth Circuit, pre-*Walden* district court decisions, which are nonbinding and distinguishable on the law and the facts.  *See, e.g.*, *Sky Capital Grp., LLC v. Rojas*, No. 1:09-cv-00083-EJL, 2009 WL 1197956, at *5 (D. Idaho Apr. 30, 2009) (plaintiff alleged defendants obtained trade secrets and other proprietary information by remotely

accessing plaintiff's computer system and email server located in Idaho after defendants quit employment with plaintiff and were no longer authorized to access plaintiff's confidential information); *Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*, No. 2:12-cv-02082-JLR, 2013 WL 566949, at *6 (W.D. Wash. Feb. 13, 2013) ("A defendant's acts are purposefully directed at the forum state if they were committed in order to compete against a plaintiff *in the forum state*." (cleaned up) (emphasis added)); *Naked Biome v. Halverson*, No. 4:18-cv-05456-YGR, 2019 WL 2183378, at *11 (N.D. Cal. Feb. 5, 2019) (applying outdated Ninth Circuit standard for proposition that "[e]xpress aiming exists where 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state'" (quoting *CollegeSource, Inc.*, 653 F.3d at 1077)), *report and recommendation adopted*, 2019 WL 2183367 (N.D. Cal. Feb 25, 2019).

*Allegations that Mr. Abkarian Targeted Pro Polish.*  Turning to the standards governing its analysis, the Court now "looks to the defendant's contacts with the forum State itself," and "not the defendant's contacts with persons who reside there."  *Walden*, 571 U.S. at 285.  Here, even as it recognizes that a plaintiff must adequately demonstrate that a defendant "expressly aimed" his conduct at the forum state, [Doc. 16 at 10], Plaintiff does not explain how Mr. Abkarian "expressly aimed" any of his conduct at *Colorado*, nor does Plaintiff specifically articulate how any of Mr. Abkarian's conduct affected *Colorado*. Instead, Plaintiff identifies 12 ways in which Mr. Abkarian "targeted *Pro Polish*, which he not only knew was a Colorado resident, but also knew the nucleus of Pro Polish's entire operation was in Colorado."  [*Id.* at 6 (emphasis added) (citation omitted)].

Specifically, Plaintiff's Response includes assertions that Mr. Abkarian (1) solicited "Pro Polish's expertise and knowledge" by "sending photographs of customers' aircraft to Colorado for evaluation," "step-by-step guidance and training from Pro Polish" by sending progress pictures to and calling Mr. Becker in Colorado, and "equipment and materials from Pro Polish" with knowledge that the equipment and materials "were procured from another Colorado vendor"; (2) "sought final approval" of each completed job from Pro Polish's FAA-certified Chief Inspector in Colorado; (3) availed himself of Pro Polish performing "labor in completing all FAA-mandated paperwork," "generating all invoices and collecting all payment from customers," and providing insurance coverage; (4) "accepted payment from Pro Polish" via deposits made in Colorado; (5) "abused the trust and confidence Pro Polish placed in him to faithfully serve its customers for the parties' mutual benefit"; (6) "knowingly and intentionally exploited Pro Polish's Colorado hub and resources to minimize his cost and maximize his gain, and availed himself of customer relationships he knew were not his, and which he knew were cultivated and maintained" in Colorado; (7) took steps to "conceal his scheme from Pro Polish, including by billing customers directly to siphon funds away from Pro Polish and its Colorado hub"; and (8) "even threatened Pro Polish (at its Colorado hub) with suit based on untrue representations regarding his entitlement to payment for certain jobs."   [*Id.* at 6–8 (footnote omitted) (citing [Doc. 16-1 at ¶¶ 11–16, 18–32, 34–41, 43; Doc. 3 at ¶¶ 7–11, 14 n.1, 16, 19, 21–23, 59–60, 64–68, 71–73])].

But Plaintiff does not address or rebut Mr. Abkarian's submission that most work performed by Mr. Abkarian occurred in California, and any work not performed in California took place in Nevada or Arizona.  In addition, there is no suggestion that Mr.

Abkarian performed any work in Colorado or for Colorado customers.  *See Eighteen Seventy, LP*, 32 F.4th at 969 (under the effects test, "the forum state must be the 'focal point' of the defendant's tortious conduct" (emphasis omitted)).  Accordingly, even if Mr. Abkarian acted intentionally and knew that Plaintiff would be injured in Colorado where it resides, the requisite second element of the "effects test"—as applied by the Tenth Circuit—is not satisfied.  *See Dental Dynamics, LLC*, 946 F.3d at 1232 (in fraud claim based on contract, "allegedly fraudulent misrepresentations and isolated incidents of outreach" were "insufficient to establish [that defendant] 'expressly aimed' his allegedly tortious misrepresentations at Oklahoma," even where defendant "knew [plaintiff] was an Oklahoma entity").  Indeed, both federal and state courts in Colorado have long followed the same analysis.  *See Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1191 (D. Colo. 2004) ("[T]hat [defendant] may have infringed on [plaintiff's] mark outside of Colorado, and did so knowing that [plaintiff] was a Colorado resident and that this infringement would have effects in Colorado, is not sufficient to demonstrate 'express aiming' at this forum."); *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1255 (D. Colo. 2000) (holding that loss of profits sustained by Colorado resident as a result of tortious conduct of nonresident in another state did not subject nonresident to jurisdiction under the long-arm statute), *aff'd*, 16 F. App'x 959 (10th Cir. 2001); *GCI 1985-1 Ltd. v. Murray Props. P'ship of Dallas*, 770 F. Supp. 585, 590 (D. Colo. 1991) (dismissing claims against a nonresident defendant for lack of personal jurisdiction where the alleged loss of anticipated profits injured the plaintiff in Colorado "only as a result of the fortuitous circumstance that [the plaintiff] maintained its headquarters in Colorado"); *Amax Potash Corp. v. Trans-Res., Inc.*, 817 P.2d 598, 600 (Colo. App. 1991)

("[W]hen both the tortious conduct and the injury occur in another state, the fact that plaintiff resides in Colorado and experiences some economic consequences here is insufficient to confer jurisdiction on a Colorado court."); *Gognat v. Ellsworth*, 224 P.3d 1039, 1053 (Colo. App. 2009) (same).

  ***Knowledge of Indirect Impact on Business Operations.***  Insofar as Plaintiff argues that an indirect impact on business operations in the forum state is a jurisdictionally relevant fact for purposes of the "express aiming requirement," the Court disagrees.  *Cf.* [Doc. 16 at 9–10].  The Court is not persuaded by Plaintiff's attempts to analogize this matter to the circumstances in *Syght, Inc. v. Partee*, No. 22-cv-00777-CMA-KLM, 2022 WL 4969582 (D. Colo. Oct. 4, 2022).  In *Syght*, the defendants were partial owners of a Colorado company whom the plaintiffs accused of lying to the company's officers and board about the value of the company's assets when negotiating the sale of the defendants' ownership interests.  *See id.* at *1.  The defendants attempted to argue that the company was a "Pennsylvania LLC," despite having taken "active steps to facilitate the company moving its principal place of business to Colorado," and directing misrepresentations to the company's Colorado-based officers and board.  *Id.* at *6.  The "active steps" taken by the defendants in *Syght* included (a) "travel[ing] to Colorado to interview and hire [a new CEO]," who openly expressed an intent to move the company's principal place of business to Colorado, and (b) becoming "a signatory on a Colorado bank account opened by [the new Colorado-based CEO]."  *Id.*  Plaintiff does not allege any such "active steps" here.

  Nor is the Court convinced that Mr. Abkarian's purported knowledge of Plaintiff's harm and his continued performance of Pro Polish services is enough to satisfy the

purposeful direction component in the absence of any indication that Mr. Abkarian provided such services in Colorado or to Colorado customers.  For instance, in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, the Tenth Circuit held that the plaintiffs, who ran online auctions through eBay from their Colorado home, established purposeful direction when the defendants successfully suspended the plaintiffs' eBay account and then threatened the plaintiffs with legal action for copyright infringement.  514 F.3d at 1067, 1072–78. The Tenth Circuit found that the defendants' conduct was intentional, *see id.* at 1073–74, and expressly aimed at the forum (Colorado) because the defendants' "express aim in acting was to halt a Colorado-based sale by a Colorado resident," *id.* at 1076. Then, considering the *third* element of the effects test, the Tenth Circuit found that the defendants therefore knew that harm to the plaintiffs would occur in Colorado.  *See id.* at 1077–78; *cf. id.* at 1075 (noting that "the 'express aiming' test focuses more on a defendant's intentions—where was the 'focal point' of its purposive efforts—while the [third prong of the effects test] concentrates on the consequences of the defendant's actions—where was the alleged harm actually felt by the plaintiff").

In contrast, here Mr. Abkarian's "express aim in acting" may be characterized as stealing California-based work from California-based customers at the expense of a Colorado resident that sought to expand its operations in California.  *See also SEBO Am., LLC v. Azar*, No. 20-cv-03015-NYW, 2021 WL 720170, at *6 (D. Colo. Feb. 24, 2021). Even if Plaintiff experienced downstream effects in Colorado, Plaintiff's allegations fail to attribute these downstream effects to any Colorado-based conduct; the relevant alleged conduct occurred exclusively in California.  Without more, such conduct is an insufficient basis for this Court to exercise jurisdiction over Mr. Abkarian.

### 2. Contract Claims

Turning to Pro Polish's breach-of-contract claim against Mr. Abkarian, the Court reaches the same conclusion that personal jurisdiction is lacking. As the Court reads the Complaint and documents submitted in connection with the Motion to Dismiss, Mr. Abkarian and Pro Polish negotiated the Agreement, whereby Mr. Abkarian would perform Pro Polish services for clients primarily in California and bill those services through Pro Polish in exchange for 55% of the revenue generated by Mr. Abkarian for "[w]ork he performed for Pro Polish customers *in California*." [Doc. 3 at ¶ 20 (emphasis added)]. Pro Polish asserts that the failure of Mr. Abkarian to comply with his obligations renders him liable for breach of contract and, coupled with Mr. Abkarian's efforts to conceal his scheme from Pro Polish, renders him liable for fraud.

In contract cases, courts "sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov*, 514 F.3d at 1071. Mr. Abkarian argues that he did not purposefully avail himself of such privileges through the Agreement. In the Response, Plaintiff fails to expressly counter Mr. Abkarian's arguments with respect to jurisdiction premised on the Parties' contractual relationship. *See generally* [Doc. 16 (applying only the tort-based "effects test")]; *but see* [Doc. 3 at ¶ 11 ("This Court has specific personal jurisdiction over Abkarian because he transacted business in Colorado by entering into a series of business transactions with a Colorado entity . . . .")].

It is axiomatic that the mere existence of a contract is insufficient to establish jurisdiction over an out-of-state defendant, notwithstanding a plaintiff's Colorado residency. *See Dental Dynamics, LLC*, 946 F.3d at 1230 ("[A]n out-of-state resident's

contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction.").  Rather,

> jurisdiction may be found only if there is some other activity by the defendant in the forum state, such as negotiation in the state pursuant to substantial and significant contacts, execution of the contract by the defendant in the forum state, or solicitation of the contract by the non-resident defendant.

*Klein Frank, P.C. v. Girards*, 932 F. Supp. 2d 1203, 1215 (D. Colo. 2013) (citing *Gognat*, 224 P.3d at 1052).  As discussed above in the context of Plaintiff's tort-based claims, "Plaintiff[] mention[s] nothing in [its] Complaint about any actions by Defendant to create a substantial connection with Colorado."  *See Auge v. Esbrook PC*, 656 F. Supp. 3d 1275, 1282 (D. Colo. 2023).  Instead, Plaintiff relies on *Plaintiff's* actions from its "Colorado hub" to argue "that [its] location in Colorado creates a link between Defendant and Colorado." *See id.*; *see also* [Doc. 3 at ¶¶ 7–11].  In the context of tort-based and contract-based claims alike, "[s]uch a link does not suffice to establish jurisdiction."  *Auge*, 656 F. Supp. 3d at 1282 (citation omitted).

Other considerations also fail to establish jurisdiction over Mr. Abkarian.  The Agreement is titled "PRO POLISH proposal for Van Nuys," which also represents the only geographical reference in the document whatsoever; the Agreement does not contain any venue or choice of law provisions.  *Cf. Far W. Cap., Inc.*, 46 F.3d at 1080 n.7 (choice-of-law provision implicating "the law of another jurisdiction . . . is . . . relevant in assessing the parties' relationship and expectations").  There is nothing to suggest that Colorado had any particular role in the structure of the Parties' relationship regarding the Agreement or in the alleged actions Mr. Abkarian took to breach his contractual obligations to Pro Polish with respect to the Agreement.  *See Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1282 (10th Cir. 2016) (no personal jurisdiction over breach-of-

contract claim where parties' contract included choice of law provision identifying different forum and did not otherwise suggest that Colorado played a role in the structuring of the business relationship between the parties).

That Mr. Abkarian called, emailed, and otherwise communicated with Mr. Becker from California—while Mr. Becker was in Colorado—also is not sufficient to establish personal jurisdiction.  *See, e.g.*, *Nat'l Bus. Brokers, Ltd.*, 16 F. App'x at 962–63 (affirming district court's dismissal and finding that telephone calls and facsimile transmissions to Colorado by a Louisiana firm were insufficient to establish personal jurisdiction); *Melea*, 511 F.3d at 1068 (concluding that ongoing communications for more than 200 days with an individual in Colorado serving as the intermediary in business dealings did not give rise to the cause of action and therefore an exercise of specific jurisdiction was impermissible).   Indeed, "save for . . . communicating with Plaintiff[], and [receiving] money [from] Colorado bank accounts, Defendant had 'virtually no connection to Colorado as relevant to the circumstances that gave rise to this lawsuit.'"  *See Auge*, 656 F. Supp. 3d at 1282 (alteration omitted) (quoting *Newsome*, 722 F.3d at 1281) (finding no personal jurisdiction).

Moreover, Mr. Abkarian did not negotiate the terms of the Agreement in Colorado. *Cf. id.* (finding no personal jurisdiction but noting that negotiations of the contracts at issue occurred in Colorado); *Newsome*, 722 F.3d at 1280-81 (out-of-state attorney working from out-of-state on an out-of-state matter did not purposefully avail himself of client's home state laws and privileges, at least not without evidence that attorney reached out to client's home forum to solicit the client's business); *see also SGI Air Holdings II LLC v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1202–03 (D. Colo. 2002) (noting that courts have found

no personal jurisdiction where the only contacts are sending and receiving electronic communications, even if the defendant entered the forum state to discuss details of the contract).   Here, Mr. Abkarian's participation in negotiations occurred exclusively in California.   Therefore, the Court finds that Plaintiff fails to make a prima facie showing that this Court has specific personal jurisdiction over Mr. Abkarian.

In short, Plaintiff has failed to establish that Mr. Abkarian has minimum contacts with Colorado that give rise to personal jurisdiction in this case.   To the extent this litigation arises from the Agreement, that contract has no connection to the forum state aside from Plaintiff's Colorado residency, which is insufficient to support the exercise of personal jurisdiction.   *See Dental Dynamics, LLC*, 946 F.3d at 1230.   To the extent this litigation arises from Mr. Abkarian's fraudulent "double-dealing scam," [Doc. 3 at 1], there is no allegation that such activity was expressly aimed toward Colorado.   *See Clear Spring Prop. & Cas. Co. v. Arch Nemesis, LLC*, No. 2:22-cv-02435-DDC-TJJ, 2023 WL 6123741, at *8 (D. Kan. Sept. 19, 2023) (assessing minimum contacts under both contract and tort frameworks for fraud claim that was "grounded in a contract").   Finally, to the extent this litigation arises from Mr. Abkarian's alleged theft of physical property—received and kept by Mr. Abkarian in California—there is no allegation that such activity was expressly aimed toward Colorado.   *See, e.g.*, *Cole v. Am. Fam. Mut. Ins. Co.*, 333 F. Supp. 2d 1038, 1047 (D. Kan. 2004) ("The mere allegation of an intentional tort, coupled with the injury of a forum resident, does not automatically establish personal jurisdiction over a nonresident defendant.").

The Court respectfully concludes that Plaintiff has failed to meet its prima facie burden as to personal jurisdiction over Mr. Abkarian.

**CONCLUSION**

For the foregoing reasons, it is **ORDERED** that:

(1)     Defendant's Combined Motion to Dismiss for Lack of Personal Jurisdiction and, Alternatively, Improper Venue [Doc. 9] is **GRANTED**;

(2)     Plaintiff's Complaint [Doc. 3] is **DISMISSED without prejudice**;

(3)     Defendant is entitled to his costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

(4)     The Clerk of Court is directed to close this case.


DATED:  May 24, 2024                    BY THE COURT:

                                        _____
                                        Nina Y. Wang
                                        United States District Judge